[No. D029663. Fourth Dist., Div. One. June 9, 1999.]

VICTOR CALOCA et al., Plaintiffs and Appellants, v.
COUNTY OF SAN DIEGO et al., Defendants and Respondents.

**COUNSEL**

Law Offices of Everett L. Bobbitt, Everett L. Bobbitt and Sanford A. Toyen for Plaintiffs and Appellants.

John J. Sansone, County Counsel, Diane Bardsley, Chief Deputy County Counsel, and C. Ellen Pilsecker, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**HALLER, J.**—The Citizens Law Enforcement Review Board (CLERB) reviewed citizen complaints and issued findings of serious misconduct against Deputy Sheriffs Victor Caloca, Ronald Cuevas, Rick Simica, and William Smith (collectively Deputies). Deputies together with the San Diego County Deputy Sheriffs Association (Sheriffs Association) brought a petition for writ of mandate to compel San Diego County (County) and San Diego County Civil Service Commission (Civil Service Commission) to conduct liberty interest hearings or alternatively an administrative appeal of CLERB's findings pursuant to the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.). The trial court denied the petition, finding (1) Deputies are not entitled to liberty interest hearings because they had failed to show a present deprivation of liberty interests, and (2) Deputies are not entitled to an administrative appeal because they failed to show punitive action.

Deputies and Sheriffs Association appeal. We determine the trial court properly ruled Deputies are not entitled to liberty interest hearings since Deputies failed to show deprivation of a constitutionally protected liberty interest. However, we hold CLERB's findings of misconduct by Deputies constitute punitive action against them within the meaning of Government Code sections 3303 and 3304, subdivision (b). Therefore they are entitled to an administrative appeal pursuant to the Public Safety Officers Procedural Bill of Rights Act. Accordingly, we reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

### 1. CLERB—General Enactment and Purpose

In 1990, County voters amended their charter to require County Board of Supervisors to establish CLERB. (San Diego County Charter, § 606.) Pursuant to the charter amendment, the board of supervisors enacted County of San Diego Ordinance No. 7880 (N.S.), adding article XVIII (entitled Citizens Law Enforcement Review Board) to the County's administrative code. "[CLERB is established] . . . to advise the Board of Supervisors, the Sheriff and the Chief Probation Officer on matters related to the handling of citizen complaints which charge peace officers and custodial officers employed by the County in the Sheriff's Department or the Probation Department with misconduct arising out of the performance of their duties. [CLERB] is also established to receive and investigate specified citizen complaints and investigate deaths arising out of or in connection with activities of peace officers . . . ." (San Diego Co. Admin. Code, § 340.)

CLERB makes (1) findings of misconduct and recommendations for imposition of discipline against individual deputies, and also (2) recommendations for changes in policies and procedures of the Sheriff's Department. (San Diego County Admin. Code, § 340.9(c) & (f).) However, "[i]t is the purpose and intent of the Board of Supervisors in constituting [CLERB] that [CLERB] will be advisory only and shall not have any authority to manage or operate the Sheriff's Department or the Probation Department or direct the activities of any County officers or employees in the Sheriff's Department . . . . [CLERB] shall not decide policies or impose discipline against officers or employees of the County in the Sheriff's Department or the Probation Department." (San Diego County Admin. Code, § 340.)

CLERB consists of 11 review board members and a small staff including an executive officer and a special investigator. (San Diego County Admin. Code, § 340.2; CLERB Rules & Regs.,[1] §§ 3.1 & 3.9.) CLERB's review board members are County residents appointed by the board of supervisors. (San Diego County Admin. Code, § 340.3.) They serve three-year terms, and may not be appointed for more than two consecutive terms. (San Diego County Admin. Code, § 340.4.) CLERB's review board members are not compensated, serve at the pleasure of the board of supervisors, and may be removed at any time. (San Diego County Admin. Code, §§ 340.5, 340.8.)

2. *CLERB Procedures for Investigating and Making Findings on Citizen Complaints*

The County administrative code authorizes CLERB to prepare and adopt rules and regulations for the conduct of its business, subject to approval by the board of supervisors. (San Diego County Admin. Code, § 340.7(b).)

These rules and regulations provide for processing and investigating citizen complaints. CLERB transmits copies of all citizen complaints received to the sheriff or chief probation officer, as appropriate. (CLERB Rules & Regs., § 9.1.) CLERB's executive officer and staff initially screen the complaints, classifying them as appropriate for investigation, deferral, or summary dismissal. (CLERB Rules & Regs., § 9.2(a).) CLERB's entire review board must review and approve the classification before "significant further action" is taken on any complaint. (CLERB Rules & Regs., § 9.2(b).)

In cases where a complaint is approved as appropriate for investigation, CLERB's investigator typically: (1) interviews the complainant, the aggrieved party, each subject officer, and witnesses; (2) examines the scene of

---

[1] All references to CLERB Rules and Regulations are to those adopted on March 9, 1992, as revised in April 1994.

the incident; and (3) views and analyzes physical evidence associated with the incident. (CLERB Rules & Regs., § 9.3(a).) The investigator attempts to secure written statements under oath from all participants and witnesses to the alleged incident. (CLERB Rules & Regs., § 9.3(c).)

The investigator prepares a written report, which includes a summary of the investigation along with the information and evidence disclosed by the investigation. (CLERB Rules & Regs., § 9.4.) The report also contains a procedural recommendation by the executive officer to the review board as to whether the case is appropriate for disposition at that time or should be referred to a three-member panel for an investigative hearing. (CLERB Rules & Regs., § 9.4.)

The investigative report is submitted to CLERB's chairperson, who may attach his or her own recommendation. (CLERB Rules & Regs., § 9.4.) The report is then submitted to the entire CLERB. (CLERB Rules & Regs., § 9.4.) The chairperson provides the complainants, aggrieved party, and each subject officer with: (1) written notice that the complaint will be considered by CLERB; (2) any recommendations on summary disposition or procedural matters; (3) a copy of the investigative report and summary, along with notification that all statements, records, reports, exhibits, and other file evidence are available on request, except where disclosure is prohibited by law; (4) written notice the parties may consult an attorney if desired who may represent them at any hearings; and (5) a copy of CLERB Rules and Regulations. (CLERB Rules & Regs., § 9.8.)

The complainant, subject officer, CLERB's executive officer, or any member of CLERB's 11-member board may request an investigative hearing for some or all of the allegations of the complaint. (CLERB Rules & Regs., § 10.1.) However, CLERB Rules and Regulations make no provision as to the effect of such a request.

CLERB's entire review board decides whether (1) an investigative hearing should be held, or (2) the entire review board should review and determine the complaint based on the investigative report and the evidence in the investigative file without a hearing. (CLERB Rules & Regs., § 9.5.) An investigative hearing may be deemed necessary where: (1) there has been an undue lapse of time since the incident; (2) there is additional evidence not disclosed by the investigative report; (3) there is reason to question the findings and conclusion of the investigative report; (4) a hearing would advance public confidence in CLERB's citizen complaint process; or (5) personal appearance by the parties would facilitate CLERB's factfinding process. (CLERB Rules & Regs., § 10.2.)

In cases where CLERB decides to review and determine a citizen complaint based on the investigative report and file evidence *without* an investigative hearing, the entire CLERB deliberates and prepares a final report which contains findings of fact and overall conclusions as to each allegation of misconduct. (CLERB Rules & Regs., §§ 9.6, 16.6.) If CLERB determines the allegations are proven by a preponderance of the evidence, it sustains findings of misconduct against the subject officer. (CLERB Rules & Regs., §§ 9.6, 14.9.)

The final report adopted by CLERB is forwarded to the board of supervisors, the sheriff or chief probation officer, the complainants, and each subject officer. (CLERB Rules & Regs., § 16.8.) The complainants or subject officers may request the final report be reopened and reconsidered by CLERB if previously unknown evidence is discovered that was not available to CLERB and there is a "reasonable likelihood" the new evidence will alter the final report's findings and conclusions. (CLERB Rules & Regs., § 16.9.) Additionally, the board of supervisors or CLERB itself upon its own initiative may reopen a final report when reconsideration is in the public interest. (CLERB Rules & Regs., § 16.9.)

### 3. *CLERB's Reports Against Deputies*

Here CLERB sustained findings of misconduct against each of the four appellants arising from three separate incidents. CLERB's findings were based on investigative reports; no hearings were conducted.

On May 9, 1995, CLERB issued its report concerning allegations of misconduct against five officers arising from the February 1992 shooting of Paul Reynolds by Deputy Jeffrey Jackson.[2] CLERB sustained an allegation of misconduct against Deputy Caloca, finding he "committed an act of misconduct when he improperly investigated the Reynolds homicide by asking Deputy Jackson leading questions . . . ." CLERB found Deputy Caloca asked Deputy Jackson questions that suggested answers creating the legal foundation for justifiable use of force.

On December 12, 1995, CLERB issued its report concerning the December 1991 shooting death of Esquiel Tinajero-Vasquez (Tinajero) by Deputy Smith and the investigation of the incident by Deputy Simica. CLERB sustained two findings of misconduct against Deputy Smith, finding (1) his attempt to stop and detain Tinajero was without reasonable cause or legal authority, and (2) his use of lethal force was excessive. CLERB sustained

---

[2] Of those five, only Deputy Caloca is a party to this proceeding.

one finding of misconduct against Deputy Simica, finding his narrative description, diagram, and report of the crime scene were misleading and incomplete.

On May 14, 1996, CLERB issued its report concerning the October 1994 detention of Robert Thompson and Dennis Webb by California Fish and Game Officer Lieutenant Turner, which occurred in Deputy Cuevas's presence. CLERB sustained three findings of misconduct: (1) Deputy Cuevas acted in a manner inconsistent with the sheriff's department's mission and ethics by refusing to prevent Lieutenant Turner from conducting an illegal detainment of Thompson and Webb; (2) Deputy Cuevas failed to safeguard Thompson;[3] and (3) Deputy Cuevas's report contained false or misleading information.

In its reports against Deputies, CLERB made general recommendations for policy changes to the sheriff's department.[4] Although CLERB sustained findings of serious misconduct against Deputies, the final reports were silent as to recommendations of discipline. CLERB's reports indicate none of the Deputies responded to its investigator's request for a statement or interview.[5]

The San Diego Sheriff's Department investigated the same incidents giving rise to CLERB's reports, and found no misconduct by any of the Deputies.

### 4. *Proceedings Subsequent to CLERB's Findings*

In June 1996, counsel for Deputies wrote letters to the Civil Service Commission, requesting it hold liberty interest hearings or alternatively administrative appeals to allow Deputies an opportunity to challenge CLERB's findings. The Civil Service Commission denied Deputies' requests.

Deputies and Sheriffs Association filed a petition in superior court seeking a writ of mandate to compel County and the Civil Service Commission to

---

[3]Thompson alleged he was ordered by Lieutenant Turner to remove his clothes and then stand in his underwear and socks for more than an hour outside a mountain campground in October. Thompson felt the effects of elevation and low temperature, and was visibly shaking; moreover, there were civilians present and Thompson felt embarrassed. Thompson had no other clothing, but the officers left him after nightfall at a 3,700-foot elevation dressed only in a T-shirt, underwear, and socks. Deputy Cuevas has denied the allegations.

[4]In its report against Deputies Smith and Simica, CLERB recommended the district attorney's office reopen its investigation of Tinajero's death.

[5]There is nothing in CLERB's reports suggesting any of the Deputies requested a hearing pursuant to CLERB Rules and Regulations, section 10.1, or reconsideration of the final report pursuant to section 16.9.

conduct: (1) liberty interest hearings to allow Deputies to clear their names of CLERB's findings; or alternatively (2) administrative appeals pursuant to the Public Safety Officers Procedural Bill of Rights Act on the ground that CLERB's findings of misconduct constitute punitive action.

In support of their petition, Deputies submitted the declaration of Assistant Sheriff Thomas Zoll, who is in charge of the human resource services bureau for the sheriff's department. Zoll stated his department when considering a deputy for advancement "may consider findings and evaluations from other credible agencies or boards," including "credible reports or findings from such sources as . . . a citizens review board." Further, Zoll stated negative findings that a deputy committed an act of misconduct "published by a credible source . . . would be given consideration in personnel decisions, and may have an adverse impact on the career of the deputy . . . . [e]ven though the [Sheriff's] department may have investigated the matter and reached a different conclusion . . . ."

The trial court denied Deputies' petition, finding (1) Deputies are not entitled to liberty interest hearings as they failed to show a present deprivation of liberty interests, and (2) Deputies are not entitled to administrative appeals as they failed to show punitive action.

## DISCUSSION

"In reviewing the trial court's ruling on a writ of mandate (Code Civ. Proc., § 1085), the appellate court is ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial evidence. [Citation.] However, the appellate court may make its own determination when the case involves resolution of questions of law where the facts are undisputed. [Citation.]" (*Saathoff* v. *City of San Diego* (1995) 35 Cal.App.4th 697, 700 [41 Cal.Rptr.2d 352].) The facts in this case, insofar as they concern the effect of CLERB's findings against Deputies, are undisputed.[6]

### I. *Liberty Interest Hearings*

Deputies contend CLERB's findings of serious misconduct have caused them to suffer harm amounting to a deprivation of their Fourteenth Amendment liberty interests in their respective careers. Deputies allege CLERB's findings deprive them from "moving and advancing within the law

---

[6]Respondents submitted no evidence which either contradicts or opposes Zoll's declaration.

enforcement profession." Therefore, Deputies claim entitlement to liberty interest hearings to clear their names.

■ " 'The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount.' [Citation.] Thus application of this principle requires a two-step analysis[:] 'We must first ask whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of "life, liberty or property"; if protected interests are implicated, we must then decide what procedures constitute "due process of law." ' [Citation.]" (*Murden* v. *County of Sacramento* (1984) 160 Cal.App.3d 302, 307 [206 Cal.Rptr. 699] (*Murden*).)

■ We have previously observed "[i]t is well established '[a] person's protected interests are not infringed merely by defamatory statements, for an interest in reputation alone is not a constitutionally protected liberty interest. [Citation.] Rather, the liberty interest is infringed only when the defamation is *made in connection with the loss of a government benefit, such as . . . employment.* [Citations.]' " (*Haight* v. *City of San Diego* (1991) 228 Cal.App.3d 413, 418 [278 Cal.Rptr. 334], italics added, quoting *Murden, supra,* 160 Cal.App.3d at p. 308.)

Even serious damage to reputation alone is insufficient to constitute deprivation of a constitutionally protected liberty or property interest—the action by the government agency must be made in connection with or result in harm to a government benefit. (See, e.g., *Paul* v. *Davis* (1976) 424 U.S. 693, 701, 709-710 [96 S.Ct. 1155, 1160-1161, 1164-1165, 47 L.Ed.2d 405] [police chief's distribution of flyer listing an individual as "active shoplifter" not a deprivation of liberty or property interest because *damage to reputation alone not sufficient* to support a claim based on loss of constitutionally protected interest]; *Siegert* v. *Gilley* (1991) 500 U.S. 226, 232-233 [111 S.Ct. 1789, 1793, 114 L.Ed.2d 277] [allegedly defamatory statements made by individual's former government employer, *not incident to the individual's termination* from former employer but resulting in loss of a subsequent position with a different employer, insufficient to state a claim for loss of liberty interest against former employer].)

Deputies do not claim, nor is there any evidence in the record on appeal of actual and present impairment to Deputies' positions with the sheriff's department—e.g., there is no claim of demotion, termination, or reduction in salary. Moreover, Deputies admit that the sheriff's department investigated Deputies for the same incidents which concerned CLERB's reports and

found no misconduct or violation of any sheriff's department rules by Deputies.

Instead, Deputies contend CLERB's findings of misconduct deprive them of their liberty interest in "moving and advancing within the law enforcement profession." Deputies argue CLERB's findings "effectively preclude [Deputies] from advancing within the ranks of their current employer, the San Diego County Sheriff's Department, and from gaining employment with other law enforcement agencies."

In support of Deputies' petition for writ of mandate and their contention CLERB's findings effectively "handcuff" them into their current positions, Deputies relied exclusively on the Zoll declaration. As noted, Zoll declared the sheriff's department when making personnel decisions would consider reports by credible sources including citizen complaint boards, and in cases where a credible source has found misconduct by officers similar to that found by CLERB against Deputies, such findings "may have an adverse impact" on Deputies' careers. Zoll did not state that the sheriff's department or any other potential employer has considered CLERB's reports in making personnel decisions or that CLERB's reports have caused present loss or harm to Deputies' positions.

Deputies' assertion that CLERB's findings would effectively lock them into their current positions at most amounts to allegations and evidence of damage to Deputies' professional reputations, which may result in *future* harm such as denial of a promotion. However, damage to reputation alone, even business or professional reputation, is insufficient to show deprivation of a constitutionally protected liberty or property interest. (See *Higginbotham* v. *King* (1997) 54 Cal.App.4th 1040, 1046-1047 [63 Cal.Rptr.2d 114] [allegedly defamatory statement by a narcotics officer that a surgeon had been cultivating marijuana thereby damaging surgeon's *business reputation and medical practice not sufficient* to constitute deprivation of constitutionally protected liberty or property interests since a person's interest in his *reputation* is neither liberty or property for purposes of the due process clause].)

Although it is clear CLERB's findings of serious misconduct stigmatize Deputies and may well impact their law enforcement careers in the future, we must focus on the absence of evidence in the record showing CLERB's allegedly false findings of misconduct were *made in connection with or have resulted in the loss* of a government benefit. The law requires there not only be government action but also the loss of a government benefit. (*Haight* v. *City of San Diego, supra,* 228 Cal.App.3d at p. 418; *Murden, supra,* 160

Cal.App.3d at p. 308.) Because the record on appeal contains no evidence of an actual loss of a government benefit suffered in connection with CLERB's report, the trial court correctly concluded Deputies were not entitled to liberty interest hearings.[7]

## II. *Administrative Appeals*

■ Deputies assert there is undisputed evidence in the record on appeal showing CLERB's findings of misconduct against them constitute punitive action, thereby entitling them to administrative appeals pursuant to the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.). We agree.

"[T]he Public Safety Officers Procedural Bill of Rights Act provides a catalogue of basic rights and protections which must be afforded all peace officers by the public entities which employ them. [Citation.]" (*Binkley* v. *City of Long Beach* (1993) 16 Cal.App.4th 1795, 1805 [20 Cal.Rptr.2d 903], fn. omitted.)

One such basic protection is that the employing public entity must provide public safety officers the right to an administrative appeal of punitive actions.[8] "No punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by *any public agency* . . . without providing the public safety officer with an opportunity for administrative appeal." (Gov. Code, § 3304, subd. (b), italics added.) For purposes of the Public Safety Officers Procedural Bill of Rights Act, punitive action is "any action that *may lead to* dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment." (Gov. Code, § 3303, italics added.)[9]

Zoll, head of the sheriff's department human resource services bureau, opined the department's promotion process is extremely competitive, and a single blemish on a deputy's career can prevent him or her from advancing in the department. He also said a report published by a "credible source," sustaining findings of misconduct of a similar nature and severity as those CLERB made against Deputies, would be given consideration in personnel

---

[7]Since Deputies have not shown deprivation of a protected liberty interest, we do not reach Deputies' contention CLERB's procedures for investigating and making findings on citizen complaints are inadequate and thus violate their due process rights.

[8]"Public safety officers" refers to peace officers, and there is no disagreement that Deputies fall within this category. (See *Howitt* v. *County of Imperial* (1989) 210 Cal.App.3d 312, 314, fn. 3 [258 Cal.Rptr. 384].)

[9]The term "public agency" is not defined. The parties do not raise this issue nor do they suggest CLERB is not a "public agency."

decisions and could have an "adverse impact" on an officer's career. Zoll added that even though the sheriff's department may have investigated an incident and reached a different conclusion, the existence of a credible report sustaining this type of misconduct would be considered.

Respondents presented no evidence in opposition to Zoll's declaration. They instead contended that Zoll's declaration does not show the CLERB findings will lead to a "punitive action" because Zoll does not specifically state that the particular CLERB reports at issue are "credible."

Respondents read Zoll's declaration too narrowly. Zoll states that sheriff's department personnel decisions are made on the basis of the department's own findings and evaluations *and on evaluations of other credible agencies, such as a citizens review board.* Zoll further said that a report published by a credible source asserting the type of misconduct findings that were made against Deputies would be given consideration in personnel decisions and could have an adverse impact on this decision. From these statements, we must necessarily infer that the sheriff's department will consider the specific CLERB reports in making personnel decisions pertaining to the Deputies and that this consideration may lead to an adverse personnel action as defined in Government Code section 3303.

Respondents maintain that the sheriff's department would not consider the CLERB reports because the reports contain conclusions inconsistent with the department's own findings and conclusions. In asserting this argument, respondents fail to recognize CLERB's role in the local governmental structure and its mandated relationship with the sheriff's department.

The members of CLERB are county officers (*Dibb* v. *County of San Diego* (1994) 8 Cal.4th 1200 [36 Cal.Rptr.2d 55, 884 P.2d 1003], 1212-1213), appointed by the board of supervisors to serve three-year terms. (San Diego County Admin. Code, §§ 340.4-340.5.) "The members of the CLERB are delegated the duty to hold hearings, administer oaths and issue subpoenas, all in order to investigate, on behalf of the board of supervisors, complaints about the official conduct of employees of the county sheriff's and probation departments." (*Dibb* v. *County of San Diego, supra*, 8 Cal.4th at p. 1212.)

In light of these functions, it would be improper to conclude that a law enforcement agency will fail to consider reports by a citizens review board formed pursuant to a county charter amendment whose members are public officers appointed by and reporting to the board of supervisors. Although CLERB may reach conclusions different from the sheriff's department's findings, these findings have significance in the overall personnel process.

As Zoll noted, "the Sheriff's Department does not function in a vacuum. . . . The effectiveness of the department is determined [in] no small degree by the ability of its deputies to be held in high regard by the community and by the agencies and organizations with whom the department interacts on a day to day basis." Because CLERB was specifically created to investigate and make recommendations concerning public complaints about peace officers, it is unrealistic and inappropriate to conclude CLERB reports—whether positive or negative—would play no role in personnel decisions. (See 74 Ops.Cal.Atty.Gen. 77, 80 (1991).)

For these same reasons, a CLERB report sustaining a finding of misconduct against an officer cannot be viewed as analogous to a negative job performance review placed in an officer's personnel file, a circumstance our court previously found insufficient to constitute punitive action entitling the subject officer to an administrative appeal. (See *Haight* v. *City of San Diego*, *supra*, 228 Cal.App.3d at p. 419; *Howitt* v. *County of Imperial*, *supra*, 210 Cal.App.3d at p. 314.) Unlike an internal performance evaluation, known only to a select number of colleagues, a CLERB report must be sent to the board of supervisors and the sheriff (CLERB Rules & Regs. § 16.8), thus placing it in the public arena and expanding its impact.

As recognized in *Hopson* v. *City of Los Angeles* (1983) 139 Cal.App.3d 347 [188 Cal.Rptr. 689], a negative report by a citizens review board prepared in the aftermath of a highly publicized police shooting of a private citizen and placed in the officer's personnel file is punitive action entitling the officer to an administrative appeal. (See also *Turturici* v. *City of Redwood City* (1987) 190 Cal.App.3d 1447, 1450 [236 Cal.Rptr. 53].) The same is true of the reports issued here where Deputies were found to have engaged in acts of serious misconduct. We think it of little import that here there is an absence of evidence that CLERB's reports were placed directly in the Deputies' personnel files. Whether formally placed in files, the evidence presented here establishes the reports will be considered in future personnel decisions affecting these deputies and may lead to punitive action. Moreover, given CLERB's reporting obligation and the presumption that an "official duty has been regularly performed," (Evid. Code, § 664), we must presume that CLERB sent its reports against Deputies to both the board of supervisors and the sheriff.

Having concluded the CLERB reports may impact personnel decisions adversely, we determine the trial court erred in finding there was insufficient evidence of punitive action within the meaning of Government Code section 3303 and Deputies were not entitled to administrative appeals under Government Code section 3304, subdivision (b). Zoll's uncontradicted declaration, in which he opined that a single blemish on a deputy's record could

prevent advancement and the CLERB findings of misconduct were sufficiently serious to have an adverse career impact, constitutes evidence of punitive action for purposes of the Public Safety Officers Procedural Bill of Rights Act.

Although CLERB's reports, findings of serious misconduct, and recommendations for discipline or policy changes are advisory only and CLERB has no authority to directly impose discipline against Deputies, our focus is on whether CLERB's findings of misconduct constitute "punitive action" by a public agency as the term is defined under the Public Safety Officers Procedural Bill of Rights Act. Because CLERB's findings are actions which may lead to adverse employment consequences, they are "punitive action[s]" within the meaning of the statute. The statute does not require a showing an adverse employment consequence has occurred or is likely to occur, merely that actions "may lead" to such a consequence. Zoll's unrebutted declaration provides ample evidence of this.

Accordingly, Civil Service Commission must provide Deputies an opportunity for an administrative appeal of CLERB's findings against them. "[T]he procedural details for implementing the provisions for an administrative appeal are to be formulated by the local agency." (*Browning* v. *Block* (1985) 175 Cal.App.3d 423, 429 [220 Cal.Rptr. 763]; see also *Binkley* v. *City of Long Beach*, *supra*, 16 Cal.App.4th at pp. 1806-1807.)[10]

## DISPOSITION

Judgment is reversed. The trial court is directed to issue a writ of mandate directing the Civil Service Commission to conduct an administrative hearing under Government Code section 3304, subdivision (b). Respondents to bear costs on appeal.

Huffman, Acting P. J., and Nares, J., concurred.

A petition for a rehearing was denied July 7, 1999, and respondents' petition for review by the Supreme Court was denied September 15, 1999.

---

[10]The parties do not contest that Civil Service Commission is the appropriate body to hear administrative appeals brought pursuant to Government Code section 3304, subdivision (b).