[No. D038059. Fourth Dist., Div. One. Aug. 27, 2002.]

VICTOR CALOCA et al., Plaintiffs and Appellants, v.
COUNTY OF SAN DIEGO et al., Defendants and Respondents.

434

COUNSEL

Law Offices of Everett L. Bobbitt, Everett L. Bobbitt and Sanford A. Toyen for Plaintiffs and Appellants.

John J. Sansone, County Counsel, and C. Ellen Pilsecker, Deputy County Counsel, for Defendants and Respondents.

OPINION

**BENKE, Acting P. J.**—In a prior appeal in this case we held that under the provisions of the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.) (Public Safety Officers Bill of Rights), three sheriff's deputies, respondents Victor Caloca, Ronald Cuevas and Rick Simica, were entitled to administrative review of misconduct findings made by the Civilian Law Enforcement Review Board (CLERB). (*Caloca v. County of San Diego* (1999) 72 Cal.App.4th 1209, 1223 [85 Cal.Rptr.2d 660] (*Caloca I*).) Although the sheriff's department had conducted its own investigation of the misconduct allegations and determined that none of the officers was subject to disciplinary action, we found the deputies were nonetheless entitled to administrative review of the adverse CLERB findings because the record disclosed the review board's findings would impair the officers' ability to compete for promotions. (*Ibid.*) We left to respondent County of San Diego (the county) formulation of the specific procedures which would govern the administrative review. (*Ibid.*)

On remand respondent County of San Diego Civil Service Commission (the commission) adopted procedures which, among other matters, required that the officers bear the burden of establishing that the misconduct findings were erroneous and permitted the commission to close some portions of its hearings to the public notwithstanding the objection of a deputy. By way of a second petition for a writ of mandate, the deputies and respondent San Diego County Deputy Sheriffs Association (Sheriffs Association) challenged the commission's procedures. In granting the petition for a writ of mandate the trial court found that the burden of proof could not be placed on a deputy and that without the consent of a deputy an administrative hearing could not be closed to the public. On appeal the commission argues these aspects of the procedure it adopted were valid.

We affirm. At a minimum an administrative appeal requires independent fact finding in a de novo proceeding. In such a proceeding the proponent of any fact bears the burden of establishing it. Thus the commission could not

place on officers the burden of refuting the civilian review board's misconduct findings. Moreover, the commission has not shown any substantial need to close its hearings over the objection of a deputy who is challenging an adverse finding.

By way of a cross-appeal the deputies and the Sheriffs Association argue they were entitled to recover their attorney fees under Code of Civil Procedure section 1021.5. Like the trial court we find the costs the deputies and the Sheriffs Association incurred in this litigation over the particular procedures used to review the misconduct findings did not entirely transcend their own interest in the outcome of the litigation. Thus we find no abuse of discretion in the trial court's order denying their motion for attorney fees.

### Summary

The background of this case was fully set forth in our opinion in *Caloca I*: "In 1990, County voters amended their charter to require County Board of Supervisors to establish CLERB. (San Diego County Charter, § 606.) Pursuant to the charter amendment, the board of supervisors enacted County of San Diego Ordinance No. 7880 (N.S.), adding article XVIII (entitled Citizens Law Enforcement Review Board) to the County's administrative code. '[CLERB is established] . . . to advise the Board of Supervisors, the Sheriff and the Chief Probation Officer on matters related to the handling of citizen complaints which charge peace officers and custodial officers employed by the County in the Sheriff's Department or the Probation Department with misconduct arising out of the performance of their duties. [CLERB] is also established to receive and investigate specified citizen complaints and investigate deaths arising out of or in connection with activities of peace officers . . . .' (San Diego Co. Admin. Code, § 340.)

"CLERB makes (1) findings of misconduct and recommendations for imposition of discipline against individual deputies, and also (2) recommendations for changes in policies and procedures of the Sheriff's Department. (San Diego County Admin. Code, § 340.9(c) & (f).) However, '[i]t is the purpose and intent of the Board of Supervisors in constituting [CLERB] that [CLERB] will be advisory only and shall not have any authority to manage or operate the Sheriff's Department or the Probation Department or direct the activities of any County officers or employees in the Sheriff's Department . . . . [CLERB] shall not decide policies or impose discipline against officers or employees of the County in the Sheriff's Department or the

Probation Department.' (San Diego County Admin. Code, § 340.)" (*Caloca I, supra,* 72 Cal.App.4th at pp. 1212-1213.)[1]

[1]As we explained in *Caloca I,* CLERB consists of "11 review board members and a small staff including an executive officer and a special investigator. (San Diego County Admin. Code, § 340.2; CLERB Rules & Regs., §§ 3.1 & 3.9.) CLERB's review board members are County residents appointed by the board of supervisors. (San Diego County Admin. Code, § 340.3.) They serve three-year terms, and may not be appointed for more than two consecutive terms. (San Diego County Admin. Code, § 340.4.) CLERB's review board members are not compensated, serve at the pleasure of the board of supervisors, and may be removed at any time. (San Diego County Admin. Code, §§ 340.5, 340.8.) [¶] . . . [¶]

"The County administrative code authorizes CLERB to prepare and adopt rules and regulations for the conduct of its business, subject to approval by the board of supervisors. (San Diego County Admin. Code, § 340.7(b).)

"These rules and regulations provide for processing and investigating citizen complaints. CLERB transmits copies of all citizen complaints received to the sheriff or chief probation officer, as appropriate. (CLERB Rules & Regs., § 9.1.) CLERB's executive officer and staff initially screen the complaints, classifying them as appropriate for investigation, deferral, or summary dismissal. (CLERB Rules & Regs., § 9.2(a).) CLERB's entire review board must review and approve the classification before 'significant further action' is taken on any complaint. (CLERB Rules & Regs., § 9.2(b).)

"In cases where a complaint is approved as appropriate for investigation, CLERB's investigator typically: (1) interviews the complainant, the aggrieved party, each subject officer, and witnesses; (2) examines the scene of the incident; and (3) views and analyzes physical evidence associated with the incident. (CLERB Rules & Regs., § 9.3(a).) The investigator attempts to secure written statements under oath from all participants and witnesses to the alleged incident. (CLERB Rules & Regs., § 9.3(c).)

"The investigator prepares a written report, which includes a summary of the investigation along with the information and evidence disclosed by the investigation. (CLERB Rules & Regs., § 9.4.) The report also contains a procedural recommendation by the executive officer to the review board as to whether the case is appropriate for disposition at that time or should be referred to a three-member panel for an investigative hearing. (CLERB Rules & Regs., § 9.4.)

"The investigative report is submitted to CLERB's chairperson, who may attach his or her own recommendation. (CLERB Rules & Regs., § 9.4.) The report is then submitted to the entire CLERB. (CLERB Rules & Regs., § 9.4.) The chairperson provides the complainants, aggrieved party, and each subject officer with: (1) written notice that the complaint will be considered by CLERB; (2) any recommendations on summary disposition or procedural matters; (3) a copy of the investigative report and summary, along with notification that all statements, records, reports, exhibits, and other file evidence are available on request, except where disclosure is prohibited by law; (4) written notice the parties may consult an attorney if desired who may represent them at any hearings; and (5) a copy of CLERB Rules and Regulations. (CLERB Rules & Regs., § 9.8.)

"The complainant, subject officer, CLERB's executive officer, or any member of CLERB's 11-member board may request an investigative hearing for some or all of the allegations of the complaint. (CLERB Rules & Regs., § 10.1.) However, CLERB Rules and Regulations make no provision as to the effect of such a request.

"CLERB's entire review board decides whether (1) an investigative hearing should be held, or (2) the entire review board should review and determine the complaint based on the investigative report and the evidence in the investigative file without a hearing. (CLERB Rules & Regs., § 9.5.) An investigative hearing may be deemed necessary where: (1) there has been an undue lapse of time since the incident; (2) there is additional evidence not

"Here CLERB sustained findings of misconduct against each of the four appellants arising from three separate incidents. CLERB's findings were based on investigative reports; no hearings were conducted.

"On May 9, 1995, CLERB issued its report concerning allegations of misconduct against five officers arising from the February 1992 shooting of Paul Reynolds by Deputy Jeffrey Jackson. CLERB sustained an allegation of misconduct against Deputy Caloca, finding he 'committed an act of misconduct when he improperly investigated the Reynolds homicide by asking Deputy Jackson leading questions . . . .' CLERB found Deputy Caloca asked Deputy Jackson questions that suggested answers creating the legal foundation for justifiable use of force.

"On December 12, 1995, CLERB issued its report concerning the December 1991 shooting death of Esquiel Tinajero-Vasquez (Tinajero) by Deputy Smith and the investigation of the incident by Deputy Simica. CLERB sustained two findings of misconduct against Deputy Smith, finding (1) his attempt to stop and detain Tinajero was without reasonable cause or legal authority, and (2) his use of lethal force was excessive. CLERB sustained one finding of misconduct against Deputy Simica, finding his narrative description, diagram, and report of the crime scene were misleading and incomplete.

"On May 14, 1996, CLERB issued its report concerning the October 1994 detention of Robert Thompson and Dennis Webb by California Fish and Game Officer Lieutenant Turner, which occurred in Deputy Cuevas's presence. CLERB sustained three findings of misconduct: (1) Deputy Cuevas

---

disclosed by the investigative report; (3) there is reason to question the findings and conclusion of the investigative report; (4) a hearing would advance public confidence in CLERB's citizen complaint process; or (5) personal appearance by the parties would facilitate CLERB's factfinding process. (CLERB Rules & Regs., § 10.2.)

"In cases where CLERB decides to review and determine a citizen complaint based on the investigative report and file evidence *without* an investigative hearing, the entire CLERB deliberates and prepares a final report which contains findings of fact and overall conclusions as to each allegation of misconduct. (CLERB Rules & Regs., §§ 9.6, 16.6.) If CLERB determines the allegations are proven by a preponderance of the evidence, it sustains findings of misconduct against the subject officer. (CLERB Rules & Regs., §§ 9.6, 14.9.)

"The final report adopted by CLERB is forwarded to the board of supervisors, the sheriff or chief probation officer, the complainants, and each subject officer. (CLERB Rules & Regs., § 16.8.) The complainants or subject officers may request the final report be reopened and reconsidered by CLERB if previously unknown evidence is discovered that was not available to CLERB and there is a 'reasonable likelihood' the new evidence will alter the final report's findings and conclusions. (CLERB Rules & Regs., § 16.9.) Additionally, the board of supervisors or CLERB itself upon its own initiative may reopen a final report when reconsideration is in the public interest. (CLERB Rules & Regs., § 16.9.)" (*Caloca I, supra*, 72 Cal.App.4th at pp. 1213-1215, fn. omitted.)

acted in a manner inconsistent with the sheriff's department's mission and ethics by refusing to prevent Lieutenant Turner from conducting an illegal detainment of Thompson and Webb; (2) Deputy Cuevas failed to safeguard Thompson; and (3) Deputy Cuevas's report contained false or misleading information.

"In its reports against Deputies, CLERB made general recommendations for policy changes to the sheriff's department. Although CLERB sustained findings of serious misconduct against Deputies, the final reports were silent as to recommendations of discipline. CLERB's reports indicate none of the Deputies responded to its investigator's request for a statement or interview.

"The San Diego Sheriff's Department investigated the same incidents giving rise to CLERB's reports, and found no misconduct by any of the Deputies. [¶] . . . [¶]

"In June 1996, counsel for Deputies wrote letters to the Civil Service Commission, requesting it hold liberty interest hearings or alternatively administrative appeals to allow Deputies an opportunity to challenge CLERB's findings. The Civil Service Commission denied Deputies' requests.

"Deputies and Sheriffs Association filed a petition in superior court seeking a writ of mandate to compel County and the Civil Service Commission to conduct: (1) liberty interest hearings to allow Deputies to clear their names of CLERB's findings; or alternatively (2) administrative appeals pursuant to the Public Safety Officers Procedural Bill of Rights Act on the ground that CLERB's findings of misconduct constitute punitive action.

"In support of their petition, Deputies submitted the declaration of Assistant Sheriff Thomas Zoll, who is in charge of the human resource services bureau for the sheriff's department. Zoll stated his department when considering a deputy for advancement 'may consider findings and evaluations from other credible agencies or boards,' including 'credible reports or findings from such sources as . . . a citizens review board.' Further, Zoll stated negative findings that a deputy committed an act of misconduct 'published by a credible source . . . would be given consideration in personnel decisions, and may have an adverse impact on the career of the deputy . . . [e]ven though the [Sheriff's] department may have investigated the matter and reached a different conclusion . . . .'

"The trial court denied Deputies' petition, finding (1) Deputies are not entitled to liberty interest hearings as they failed to show a present deprivation of liberty interests, and (2) Deputies are not entitled to administrative

appeals as they failed to show punitive action." (*Caloca I, supra,* 72 Cal.App.4th at pp. 1215-1217, fns. omitted.)

In our opinion in *Caloca I* we reversed the trial court's order in part. We found that although the deputies were not entitled to liberty interest hearings, they were entitled to administrative appeals under Government Code section 3304, subdivision (b). In rejecting the deputies' contention that due process required that they have an opportunity to appeal the CLERB findings, we stated: "Although it is clear CLERB's findings of serious misconduct stigmatize Deputies and may well impact their law enforcement careers in the future, we must focus on the absence of evidence in the record showing CLERB's allegedly false findings of misconduct were *made in connection with or have resulted in the loss* of a government benefit. The law requires there not only be government action but also the loss of a government benefit. [Citations.] Because the record on appeal contains no evidence of an actual loss of a government benefit suffered in connection with CLERB's report, the trial court correctly concluded Deputies were not entitled to liberty interest hearings." (*Caloca I, supra,* 72 Cal.App.4th at pp. 1219-1220, fn. omitted.)

In finding that the officers were nonetheless entitled to an administrative appeal under Government Code section 3304, we held: "Although CLERB's reports, findings of serious misconduct, and recommendations for discipline or policy changes are advisory only and CLERB has no authority to directly impose discipline against Deputies, our focus is on whether CLERB's findings of misconduct constitute 'punitive action' by a public agency as the term is defined under the Public Safety Officers Procedural Bill of Rights Act. Because CLERB's findings are actions which may lead to adverse employment consequences, they are 'punitive action[s]' within the meaning of the statute. The statute does not require a showing an adverse employment consequence has occurred or is likely to occur, merely that actions 'may lead' to such a consequence. Zoll's unrebutted declaration provides ample evidence of this." (*Caloca I, supra,* 72 Cal.App.4th at p. 1223.)

As we noted at the outset, on remand the commission adopted procedures that placed the burden of proof on deputies and permitted the commission to close its hearings to the public without the consent of the deputies. In addition the commission adopted a rule under which its disposition of a deputy's appeal would not be binding on the county but would only be advisory.

As we also noted, the deputies and the Sheriffs Association challenged the commission's procedures in a second petition for a writ of mandate. In

ruling on the petition the trial court found that the procedures were void because they had not been adopted by the county board of supervisors as required by the county charter. The trial court also found that the procedures were defective in three particulars: (1) their lack of binding force on the county; (2) the burden they placed on deputies challenging CLERB findings; and (3) the power they gave the commission to close its hearings to the public.

On appeal the county and the commission do not challenge the first two aspects of the trial court's ruling: the requirement that the rules be adopted by the board of supervisors and that they be binding on the county. Rather, it has limited its appeal to its contentions that in hearings reviewing CLERB findings the burden of proof may be placed on deputies and the hearings may be closed.

## DISCUSSION

## I

■ The deputies and the Sheriffs Association have moved to dismiss the county's appeal. They argue that, in light of the fact the county has not challenged the trial court's determination that the commission's procedural rules were void because they had not been adopted by the board of supervisors, there is no longer any justiciable controversy between the parties. We deny the motion.

In determining whether a justiciable controversy exists, courts employ a two-pronged test: "Under the first prong, the courts will decline to adjudicate a dispute if 'the abstract posture of [the] proceeding makes it difficult to evaluate . . . the issues' [citation], if the court is asked to speculate on the resolution of hypothetical situations [citation], or if the case presents a 'contrived injury' [citation]. Under the second prong, the courts will not intervene merely to settle a difference of opinion; there must be an imminent and significant hardship inherent in further delay. [Citation.]" (*Farm Sanctuary, Inc. v. Department of Food & Agriculture* (1998) 63 Cal.App.4th 495, 502 [74 Cal.Rptr.2d 75], quoting *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 172-173 [188 Cal.Rptr. 104, 655 P.2d 306].)

First, notwithstanding the county's concession that any procedures it employs must eventually be approved by the board of supervisors, its contentions with respect to the appropriate burden of proof and the power to close hearings present real controversies that require prompt resolution.

The question of what burden is appropriate in an administrative appeal from a CLERB finding was thoroughly litigated below and is clearly and definitively presented on this record, as is the question of whether hearings may be closed. The fact that any procedures will be considered by the board of supervisors does not rob the record of the clarity it presents on these issues.

Second, our failure to consider the county's contentions would impose a significant hardship on the county. Given the vigor with which the deputies have disputed the CLERB findings, there can be no doubt the administrative hearings will take place, but only after the board of supervisors has adopted procedures for the hearings. Were we to dismiss the county's appeal, the board of supervisors would be compelled to adopt procedures that conform with the trial court's judgment and conduct hearings under them. At that point the deputies would no doubt challenge the county's standing to contest procedures that it had duly adopted, albeit under compulsion of the trial court's order. Thus, as the county points out, if we fail to consider the issues it wishes to assert, there is some risk those issues will entirely escape review or, in any, event, prompt additional circuitous litigation.

In short then, the circumstances presented on this record oblige us to consider the issues the county has raised.[2]

## II

■ As we have indicated, we found in *Caloca I* that while the deputies' interest in their reputations is not substantial enough to warrant protection under the Constitution, CLERB's findings did impair the deputies' ability to obtain promotions and therefore the Public Safety Officers Bill of Rights gave the deputies the right to administrative review. (*Caloca I, supra,* 72 Cal.App.4th at pp. 1222-1223.)

The fact that the deputies, interest is substantial enough to require a hearing under Government Code section 3304, subdivision (b), largely disposes of the county's contention that at such a hearing the burden of proof may be placed on the deputies. While the precise details of the procedure required by Government Code section 3304 are left to local law enforcement agencies (*Caloca I, supra,* 72 Cal.App.4th at p. 1223), the law is clear that the administrative appeal provided by the Public Officers Bill of Rights requires "an '*independent re-examination*' " of an order or decision made. (*Stanton v. City of West Sacramento* (1991) 226 Cal.App.3d 1438, 1443 [277

---

[2]We deny the deputies' companion motion for sanctions. The issues the county has raised need resolution and are in no sense frivolous. (See *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649-651 [183 Cal.Rptr. 508, 646 P.2d 179].)

Cal.Rptr. 478], quoting *Doyle v. City of Chino* (1981) 117 Cal.App.3d 673, 679 [172 Cal.Rptr. 844], italics added.) At a minimum the reexamination must be conducted by someone who has not been involved in the initial determination. (*Giuffre v. Sparks* (1999) 76 Cal.App.4th 1322, 1330 [91 Cal.Rptr.2d 171]; *Runyan v. Ellis* (1995) 40 Cal.App.4th 961, 966 [47 Cal.Rptr.2d 356]; *Stanton v. City of West Sacramento, supra,* 226 Cal.App.3d at p. 1443; *Doyle v. City of Chino, supra,* 117 Cal.App.3d at p. 679.) There also is little doubt that the result of any hearing required by Government Code section 3304, subdivision (b), is subject to review by way of a writ of administrative mandate under Code of Civil Procedure section 1094.5 (see *Doyle v. City of Chino, supra,* 117 Cal.App.3d at p. 680) and that Code of Civil Procedure section 1094.5 implicitly requires that an administrative decision maker " 'set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order.' " (*City of Fairfield v. Superior Court* (1975) 14 Cal.3d 768, 778-779 [122 Cal.Rptr. 543, 537 P.2d 375].)

An independent decision maker who must make factual findings subject to judicial review cannot simply rely on the determination of the individual or agency that has initiated punitive action against a peace officer. Rather, the independent fact finding implicit in the concept of an administrative appeal requires at a minimum that the hearing be treated as a de novo proceeding at which no facts are taken as established and the proponent of any given fact bears the burden of establishing it. As one court has stated: "It is axiomatic, in disciplinary administrative proceedings, that the burden of proving the charges rests upon the party making the charges. [Citations.] [¶] . . . The obligation of a party to sustain the burden of proof requires the production of evidence for that purpose. [Citation.]" (*Parker v. City of Fountain Valley* (1981) 127 Cal.App.3d 99, 113 [179 Cal.Rptr. 351].)

In this regard the county's reliance on *Binkley v. City of Long Beach* (1993) 16 Cal.App.4th 1795 [20 Cal.Rptr.2d 903], is unpersuasive. *Binkley* discussed the sui generis administrative rights of a police chief who served at the pleasure of a city manager. The chief was discharged because the city manager had lost confidence in his ability to lead the police department and at a postdischarge hearing the police chief was afforded the opportunity to refute a series of conclusions the city manager had reached about the chief's performance. In that unique context the city easily met its burden of proof. By way of a letter to the hearing officer the city manager unambiguously established the only fact necessary to sustain dismissal of the chief: the city manager's subjective loss of confidence in the chief's performance. Thus the court could quite correctly conclude that the burden of proof had not been improperly shifted to the police chief; the record clearly demonstrated there was no dispute the city had easily met its burden. Here to sustain CLERB's

factual conclusions about the deputies' conduct, the county will have to do far more than present evidence of its subjective views of the deputies' performance.

In sum then, the trial court correctly required that the county bear the burden of sustaining the CLERB findings.

III

■ In pertinent part the procedures adopted by the commission state: "There shall be no right to a public hearing of the administrative appeal. The Commissioner acting as hearing officer may close all or any portion of the proceeding for the purpose of hearing or receiving otherwise confidential information not subject to public disclosure." Like the trial court, we do not believe the commission had the power to adopt this rule.

In finding in *Caloca I* that an adverse CLERB report was more damaging than a negative job performance review and was therefore, unlike a performance review, a punitive action within the meaning of Government Code section 3304, we stated: " '[T]he Sheriff's Department does not function in a vacuum. . . . The effectiveness of the department is determined [in] no small degree by the ability of its deputies to be held in high regard by the community and by the agencies and organizations with whom the department interacts on a day to day basis.' Because CLERB was specifically created to investigate and make recommendations concerning public complaints about peace officers, it is unrealistic and inappropriate to conclude CLERB reports—whether positive or negative—would play no role in personnel decisions. [Citation.]

"For these same reasons, a CLERB report sustaining a finding of misconduct against an officer cannot be viewed as analogous to a negative job performance review placed in an officer's personnel file, a circumstance our court previously found insufficient to constitute punitive action entitling the subject officer to an administrative appeal. [Citations.] Unlike an internal performance evaluation, known only to a select number of colleagues, a CLERB report must be sent to the board of supervisors and the sheriff (CLERB Rules & Regs. § 16.8), thus placing it in the public arena and expanding its impact." (*Caloca I, supra*, 72 Cal.App.4th at p. 1222.)

Because it is the very public nature of the CLERB findings that gives rise to the deputies' right to administrative appeal, the deputies have a substantial interest in receiving any vindication in a proceeding which is open to the public. The reversal of a CLERB finding of misconduct that

occurred by way of a closed hearing would not give members of the public the same level of confidence as a proceeding that was fully open to them and in which they had complete access to contradictory evidence offered by a deputy. Thus closed hearings would not provide a deputies with the full vindication they seek.

Against the deputies' substantial interest in a public hearing, the county has not articulated any interest that supports a closed hearing. Rather, it has relied solely on the holding in *Swars· v. Council of City of Vallejo* (1949) 33 Cal.2d 867, 873 [206 P.2d 355]. In *Swars* a police officer was accused of misconduct and at a closed civil service commission hearing permitted by a city ordinance he was discharged. The court rejected his contention that he was entitled to an open hearing. "The ordinance implementing the charter of Vallejo provides for a closed hearing, if by unanimous vote the Civil Service Commission shall so order, and its conclusion to exclude the public was based upon sound reason and statutory authority. Swars was not a defendant in a criminal prosecution as defined by article I, section 13, of the state Constitution; nor was the hearing by the commission a proceeding of a 'court of justice' within the meaning of section 124 of the California Code of Civil Procedure." (*Ibid.*)

Because *Swars* was decided long before the 1976 enactment of the Public Safety Officers Bill of Rights, the court there was not required, as we are, to weigh the conflicting due process interests of public safety officers and the public agencies which employ them. (See *Binkley v. City of Long Beach, supra,* 16 Cal.App.4th at p. 1807; *Giuffre v. Sparks, supra,* 76 Cal.App.4th at p. 1331; *Runyan v. Ellis, supra,* 40 Cal.App.4th at pp. 964-965.) At a minimum the Public Safety Officers Bill of Rights requires that where public safety officers have a substantial interest in a particular procedure, a public agency must articulate some reason that use of that procedure is nonetheless unwarranted or unduly burdensome. (See *Binkley v. City of Long Beach, supra,* 16 Cal.App.4th at p. 1807; *Giuffre v. Sparks, supra,* 76 Cal.App.4th at p. 1331; *Runyan v. Ellis, supra,* 40 Cal.App.4th at pp. 964-965.) Because the deputies have an obvious interest in a public hearing and the county has not offered any reason the hearings should be closed, Government Code section 3304 requires that they be open.[3]

In this regard we think it is important to note the administrative appeal required by Government Code section 3304 is not an *investigatory* process,

---

[3]We do agree with the county that hearings conducted by hearing officers, as opposed to multimember commissions, are not subject to the open meeting requirements of the Ralph M. Brown Act (Gov. Code, § 54950 et seq.) (Brown Act) (see *Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 375 [20 Cal.Rptr.2d 330, 853 P.2d 496], citing *Wilson v. San Francisco Mun. Ry.* (1973) 29 Cal.App.3d 870, 878-879 [105 Cal.Rptr. 855]). However the hearings we required in *Caloca I* are mandated by the distinct provisions of the Public Safety Officers Bill

in which the need for confidentiality has been well recognized. (See, e.g., *Ryan v. Commission on Judicial Performance* (1988) 45 Cal.3d 518, 527 [247 Cal.Rptr. 378, 754 P.2d 724, 76 A.L.R.4th 951].) It is an adjudicative process by which the deputies hope to restore their reputations.

IV

▇ Finally, we turn to the deputies' and the Sheriffs Association's cross-appeal. They argue that the trial court abused its discretion in denying their motion for attorney fees under Code of Civil Procedure section 1021.5. We find no abuse of discretion.

Code of Civil Procedure section 1021.5 provides in pertinent part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." Importantly, "[a]n award of attorney fees under Code of Civil Procedure section 1021.5, requires that the claimant show the cost of its legal victory transcended its personal interest. [Citation.]" (*Jobe v. City of Orange* (2001) 88 Cal.App.4th 412, 419 [105 Cal.Rptr.2d 782].) The deputies and the Sheriffs Association failed to meet this burden.

By way of their declarations in support of their motion, the deputies argued their attorneys spent 131 hours representing them and that counsel was entitled to be compensated at a rate of $250 per hour. Thus, at most, between the three deputies and the Sheriffs Association $32,500 in attorney fees was incurred. As the trial court found, "the individual Petitioners and their association itself do have a very concrete personal and pecuniary stake in this action, and thus a financial incentive to bring the action." Given that personal interest and the amount of fees expended, the trial court could reasonably conclude that the $32,500 incurred did not transcend the deputies' and the Sheriffs Association's interest in the litigation. Thus the trial court did not abuse its discretion in denying the deputies' and the Sheriffs Association's motion. (*Jobe v. City of Orange, supra,* 88 Cal.App.4th at p. 419.)

---

of Rights. Under that statutory scheme, a hearing may not be closed over a safety officer's objection.

We think it is worthy to note that if, rather than a hearing officer, the civil service commission itself heard the administrative appeal, the Brown Act would also prevent the hearing from being closed without the deputies' consent. (Gov. Code, § 54957.)

## Disposition

The judgment is affirmed. Each party shall bear its own costs of appeal.

Huffman, J., and Haller, J., concurred.

On September 25, 2002, the opinion was modified to read as printed above.