Filed 2/9/22

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SAMUEL JOSEPH,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>CITY OF ATWATER,<br><br>    Defendant and Respondent. | F080711<br><br>(Super. Ct. No. 18CV-04981)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  Brian L. McCabe, Judge.

Rains Lucia Stern St. Phalle & Silver, Michael L. Rains and Johnathan R. Murphy for Plaintiff and Appellant.

Churchwell White, Douglas L. White and Erin M. Dervin for Defendant and Respondent.

-ooOoo-

Plaintiff Samuel Joseph filed a petition for writ of mandate after defendant City of Atwater (City) terminated his employment as chief of police.  Plaintiff alleged City violated the Public Safety Officers Procedural Bill of Rights Act (POBRA; Gov. Code, § 3300 et seq.).[1] Section 3304, subdivision (c) provides that no chief of police may be removed from office without being provided written notice of the reasons "and an

---

[1]    Undesignated statutory references are the Government Code.

opportunity for administrative appeal." Plaintiff alleges City failed to provide him with the type of hearing necessary to afford him "an opportunity for administrative appeal" because the hearing offered by City (1) was not mutually scheduled, (2) was not before a mutually selected neutral hearing officer, (3) did not require City to bear the burden of proof as to just cause for his termination, and (4) did not require City to present witnesses and allow them to be cross-examined.

The trial court denied plaintiff's petition for writ of mandate, concluding plaintiff was an at-will employee pursuant to the terms of his employment contract and the hearing offered by City satisfied the statutory requirement of providing "an opportunity for administrative appeal." (§ 3304, subd. (c).) Plaintiff contends the trial court erred in characterizing him as an at-will employee for all purposes and then determining the hearing offered by City was adequate for such an employee.

Plaintiff's employment agreement stated he could be removed as police chief for any reason and, if the removal was not for willful misconduct, he had the option of continuing his employment by returning to the position of police lieutenant. Based on our de novo interpretation of the employment agreement, we conclude plaintiff (1) was an at-will employee only in the capacity of police chief and (2) had rights to employment as a lieutenant that could be terminated only for cause. Thus, plaintiff's employment as a lieutenant was not at-will. Consequently, before City could terminate his right to employment as a lieutenant, it was required by POBRA to provide him with the type of administrative appeal afforded public safety officers who are terminable only for cause. City did not offer plaintiff that type of administrative appeal, which includes a full evidentiary hearing before a neutral fact finder. Thus, a writ of mandate should have been issued directing City to offer plaintiff such a hearing.

We therefore reverse the judgment.

2.

**FACTS**

On November 17, 2016, plaintiff and City entered into a "CHIEF OF POLICE EMPLOYMENT AGREEMENT" specifying the terms, benefits, and requirements regarding City's employment of plaintiff as its chief of police. It was signed by plaintiff and Frank Pietro, city manager, and attested to by the city clerk. Section 2.2 addressed City's *removal* of plaintiff from his employment as chief of police by stating:

> "Joseph shall be designated an 'at-will' employee. Accordingly, the City Manager may terminate this [Chief of Police] Employment Agreement and remove Joseph from the position of Police Chief at any time, for any reason, with or without cause. If the City Manager removes Joseph from the position of Police Chief for any reason other than willful misconduct in office or conviction of a crime of moral turpitude, Joseph shall be given the option to either:
>
> > "2.2.1 Return to his previous position of Police Lieutenant, where his compensation will be based on Step 6 of Range 315 of the Salary Schedule for Police Lieutenant; or
> >
> > "2.2.2 Terminate his employment with the City and receive four (4) months wage continuation pay, with such pay to be computed at the highest base salary received by Joseph during his service with the City. This Section 2.2.2 shall not apply in the event of a 'Resignation' as defined [in] Section 2.1."

On September 28, 2018, Lori Waterman, in her capacity as city manager, sent plaintiff and his attorney a notice of intended discipline along with a final copy of the investigation report and supporting exhibits relating to the allegations against plaintiff. The notice informed plaintiff of the city manager's "intention to terminate [plaintiff's] employment as Police Chief with the City for willful and other misconduct." The notice listed violations of five policies and three Penal Code sections, described four types of willful misconduct, and set forth four other mismanagement issues.

The notice of intended discipline described plaintiff's right to appeal the termination decision. It stated that, in accordance with section 3304, subdivision (c), plaintiff was "entitled to present any testimony or documentary evidence [he] believe[d]

3.

should be considered regarding [his] termination … to a neutral arbitrator at the City's expense." Plaintiff also was informed that (1) he could submit testimony in person or in writing; (2) he could bring representation to the hearing; (3) the hearing would not be "a full evidentiary hearing in that you are not entitled to cross-examine witnesses and the City is not obligated to call any witnesses or present any evidence beyond this Notice and its attachments;" (4) the hearing officer would make a recommendation on the proposed termination to the city manager; and (5) the city manager would make the final, binding decision.

The notice of intended discipline stated that if plaintiff wished to appeal the proposed termination, he should inform the city manager by October 10, 2018; the hearing would occur no later than 60 days after his request, unless the parties agreed to a continuance; the neutral hearing officer would be chosen and paid by City; and plaintiff would remain on the payroll until the city manager made a final decision.

On October 4, 2018, plaintiff's attorney sent City a letter stating plaintiff was appealing the proposed termination and was objecting to the appeal procedure offered by City. The letter asserted plaintiff was "entitled to a hearing before a 'truly neutral arbitrator' (not one selected by the City at the City's expense), at which the City will be required to bear the burden of proving the charges, be required to call witnesses in support of the charges, and [plaintiff] will be afforded the opportunity to cross-examine those witnesses, and present witnesses to testify on his behalf."

On October 15, 2018, City sent plaintiff's attorney a letter stating a retired justice of the Court of Appeal had been chosen as the hearing officer and proposing dates for the hearing. The letter requested a response identifying hearing dates acceptable to plaintiff.

Plaintiff did not respond to the request for acceptable dates before the deadline set in the letter. A few days after the deadline, City sent plaintiff's attorney a letter noting the lack of a response and stating hearing dates of December 5, 6, and 7, 2018, had been chosen based on the hearing officer's availability.

4.

Plaintiff's attorney responded with a letter setting forth objections to City's conduct and the proposed procedures for the hearing. The letter concluded by stating:

> "In the event the City does not wish to hold a hearing in accordance with the process required by existing case and statutory law, or insists on having the hearing conducted by the hearing officer it has unilaterally selected and paid for, we will proceed to Superior Court to challenge the City's proposed hearing procedure and the selection of its hearing officer, and will seek both fees and costs for having to do so."

In November 2018, the parties exchanged further correspondence. Ultimately, they were unable to agree on the type of hearing required by section 3304. Plaintiff refused to participate in a hearing that did not comply with his interpretation of POBRA and, as a result, no hearing was held. On November 15, 2018, the city manager issued a "Final Notice of Termination" stating plaintiff's employment was being terminated, effective immediately, for willful and other misconduct.

## PROCEEDINGS

In December 2018, plaintiff filed a verified petition for writ of mandate against City. In January 2019, plaintiff filed a first amended verified petition for writ of mandate. City filed a verified answer, dated February 13, 2019, setting forth its disagreement with plaintiff's interpretation of section 3304's requirement that plaintiff be given an opportunity for an administrative appeal.

In December 2019, after the parties had briefed the merits of the petition, the trial court held a hearing and took the matter under submission. Two days later, the court filed its written order denying plaintiff's petition for writ of mandate and entered judgment in favor of City. Plaintiff appealed.

## DISCUSSION

### I. TERMS OF EMPLOYMENT

An important issue in this appeal is how to characterize plaintiff's employment with City. City and the trial court characterized him as an at-will employee. Plaintiff contends (1) he had the contractual right to be returned to the position of lieutenant if his

5.

termination as police chief was without cause; (2) City's decision to terminate his employment for willful misconduct deprived him of his right to employment as a lieutenant; and (3) the termination for cause created a situation where he was entitled to the same procedural rights as other public safety officers terminated or disciplined for cause, regardless of the existence or nonexistence of a property interest in that employment.

A.    Legal Principles

Labor Code section 2922 sets forth the general presumption that "[a]n employment, having no specified term, may be terminated at the will of either party on notice to the other." This presumption of at-will employment, while strong, is limited by the fundamental freedom of contract. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 335 (*Guz*).) Thus, an employer and employee may agree to any limit, otherwise lawful, on the employer's right to terminate the employment relationship for any or no reason. (*Id*. at p. 336.) Pursuant to these general principles, we conclude the employment agreement signed by the parties must be examined to determine whether the parties have contractually limited City's right to terminate plaintiff's employment for no reason.

The interpretation of the employment agreement is guided by the following principle: "It is solely a judicial function to interpret a written contract unless the interpretation turns upon the credibility of extrinsic evidence, even when conflicting inferences may be drawn from uncontroverted evidence." (*Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 439.) Here, the parties presented no extrinsic evidence addressing the agreement's meaning. Therefore, the interpretation of the employment agreement poses questions of law subject to our independent review. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865.)

The threshold question when interpreting a written contract is whether its text is ambiguous—that is, reasonably susceptible to more than one interpretation. (*Smith v.*

6.

*Adventist Health System/West* (2010) 182 Cal.App.4th 729, 754–755.) Whether contractual text is ambiguous presents a question of law subject to our independent review on appeal. (*Id.* at p. 755; see Silverstein, *The Contract Interpretation Policy Debate: A Primer* (2021) 26 Stan. J.L. Bus. & Fin. 222, 228–230 [initial stage of both textualist and contextualist approach to contract interpretation is whether an ambiguity exists].)

   B.   Contractual Provisions Addressing Termination

The contractual text addressing City's right to terminate plaintiff's employment is contained in section 2.2 of the agreement, which begins by stating that plaintiff "shall be designated an 'at-will' employee. Accordingly, the City Manager may terminate this Agreement and *remove* [plaintiff] from *the position of Police Chief* at any time, for any reason, with or without cause." (Italics added.) Next, section 2.2 limits City's right to terminate plaintiff's employment for any reason by stating: "If the City Manager removes [plaintiff] from the position of Police Chief for any reason other than willful misconduct in office or conviction of a crime of moral turpitude, [plaintiff] shall be given the option to either" return to his previous position as a lieutenant or receive four months of continuation pay.

Based on the trial court's ruling and District's arguments, we consider whether the employment agreement is reasonably susceptible to the interpretation that plaintiff is an at-will employee *in all capacities*. The first sentence of section 2.2 of the employment agreement stating plaintiff "shall be designated an 'at-will' employee." Reading this sentence in isolation, one might conclude that plaintiff is an at-will employee in all capacities. However, reading a sentence in isolation is not reasonable because California law requires contracts to be interpreted as a whole. (See *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18–19, ["language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract"].)

7.

The second sentence of section 2.2 addresses the extent to which plaintiff is an at-will employee by providing that the city manager may "remove [plaintiff] *from the position of Police Chief* at any time, for any reason, with or without cause." (Italics added.) The plain meaning of this sentence is that plaintiff's employment *as police chief* may be terminated at any time for any reasons and, therefore, his employment in that position is properly characterized as at-will. (See *Guz, supra*, 24 Cal.4th at p. 335 [definition of at-will employment].)

The remainder of section 2.2 places a limitation on City's right to terminate plaintiff's employment for any reason. It provides that if plaintiff's employment as police chief is terminated for reasons other than "willful misconduct in office or conviction of a crime of moral turpitude," plaintiff has a right to continued employment as a lieutenant or a payment of four months' salary, at his option. Thus, section 2.2 necessarily implies that City's right to terminate plaintiff's employment *as a lieutenant* is limited to the specified reasons—that is, willful misconduct or conviction of a crime of moral turpitude, which necessitate certain procedural protections. This contractual limitation on City's right to terminate plaintiff's overall employment is more specific than the sentence stating plaintiff is an at-will employee and, therefore, must be given effect. (See Code Civ. Proc., § 1859 [if a general provision in a contract conflicts with a specific provision, the specific provision controls].)

Consequently, we conclude that when section 2.2 is read as a whole, it is not reasonably susceptible to the interpretation that *all* of plaintiff's rights to employment were at-will. Instead, the employment agreement unambiguously created a hybrid employment relationship between City and plaintiff. First, plaintiff's employment as chief of police was at-will. Second, plaintiff's employment as a lieutenant was not at-will because it could be terminated only on the grounds specified in the agreement. Interpreting the agreement otherwise would deprive plaintiff of the job security for which he bargained.

II.     OPPORTUNITY FOR AN ADMINISTRATIVE APPEAL

The parties agree plaintiff has a statutory right under section 3304, subdivision (b) to "an opportunity for administrative appeal" and disagree about the procedural protections that apply to the administrative appeal.  Their disagreement about the procedural protections is based, to a large degree, on the different ways they characterized plaintiff's employment rights.  As a result, our determination that plaintiff had a hybrid employment relationship in which his employment as chief of police was at-will and his employment as a lieutenant could be terminated only as specified in the employment agreement provides the foundation for our analysis of the procedural protections that must be applied to his administrative appeal.

A.     Statutory Text

In 1976, the Legislature enacted POBRA to set forth a list of basic rights and protections that public entities must provide to the peace officers they employ.  (*Oakland Police Officers' Assn. v. City of Oakland* (2021) 63 Cal.App.5th 503, 512.)  One of those protections was "an opportunity for administrative appeal," which is referred to twice in the current version of section 3304:

> "(b) No punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by any public agency against *any public safety officer* who has successfully completed the probationary period that may be required by his or her employing agency without providing the public safety officer with *an opportunity for administrative appeal*.
>
> "(c) No chief of police may be removed by a public agency, or appointing authority, without providing the *chief of police* with written notice and the reason or reasons therefor and *an opportunity for administrative appeal.*
>
>> "For purposes of this subdivision, the removal of a chief of police by a public agency or appointing authority, for the purpose of implementing the goals or policies, or both, of the public agency or appointing authority, for reasons including, but not limited to, incompatibility of management styles or as a result of a change in administration, shall be sufficient to constitute 'reason or reasons.'

9.

"Nothing in this subdivision shall be construed to create a property interest, where one does not exist by rule or law, in the job of Chief of Police." (Italics added.)

We note that POBRA does not define "administrative appeal" or the phrase "opportunity for an administrative appeal." Before 1998, courts acknowledged that POBRA "does not specify how the appeal process is to be implemented" and concluded that "[t]he details of administrative appeal under section 3304 … are left to be formulated by the local agency." (*Binkley v. City of Long Beach* (1993) 16 Cal.App.4th 1795, 1806 (*Binkley*); *Browning v. Block* (1985) 175 Cal.App.3d 423, 429.) In 1998, the same year the Legislature added subdivision (c) to section 3304, it also enacted section 3304.5. (Stats. 1998, ch. 263, § 1 [Sen. Bill No. 1662].) Section 3304.5 provides: "An administrative appeal instituted by a public safety officer under this chapter *shall* be conducted in conformance with rules and procedures adopted by the local public agency." (See § 14 [" 'Shall' is mandatory"].)

B.     Absence of Local Rules and Procedures

The record on appeal, as acknowledged by the parties at oral argument, does not contain any rules and procedures for the conduct of administrative appeals adopted by City in accordance with section 3304.5. Our independent research of City's municipal code did not locate any rules or procedures that might apply to an administrative appeal required by POBRA.

Counsel's responses to questions during oral argument suggested that if a police lieutenant were to seek an administrative appeal after being terminated for cause, the lieutenant's appeal would be governed by provisions in a memorandum of understanding. Such a memorandum of understanding is not included in the appellate record.[2] In the

---

[2]     We note the possibility that procedures set forth in a memorandum of understanding *might* qualify as "procedures adopted by" City for purposes of section 3304.5 and, as a result, *might* govern plaintiff's administrative appeal challenging the for-cause termination of his right to employment as a lieutenant. Given the record before us,

10.

absence of rules and procedures adopted by City pursuant to section 3304.5, we address the procedural protections that must be applied to the hybrid situation presented in this case to satisfy POBRA and due process.

C.      Application of POBRA to Hybrid Employment Relationship

The parties' briefing did not identify the hybrid nature of plaintiff's employment. Instead, the parties treated plaintiff's employment rights as governed solely by subdivision (c) of section 3304. We disagree with this approach.

We conclude that plaintiff's rights to employment as chief of police are governed by subdivision (c) of section 3304. That provision addresses removal of a chief of police from office and clearly applies to the removal of plaintiff from that office. However, subdivision (c) does not cover plaintiff's rights to employment as a lieutenant. We conclude those rights are governed by subdivision (b) of section 3304, which applies to punitive action against a public safety officer.

Section 3301 defines a public safety officer to mean all peace officers specified in certain provisions of the Penal Code. Those provisions include Penal Code section 830.1, which states that "a police officer … is a peace officer." (Pen. Code, § 830.1, subd. (a).) We conclude that a lieutenant is a police officer and therefore a public safety officer for purposes of section 3304, subdivision (b).

POBRA defines "punitive action" as including "any action that may lead to dismissal." We conclude that the termination of plaintiff's right to employment as a lieutenant qualifies as punitive action for purposes of POBRA. (See *Trejo v. County of Los Angeles* (2020) 50 Cal.App.5th 129, 135, fn. 2 [right of administrative appeal provided by § 3304, subd. (b) is an important pre-termination safeguard, on any punitive action, guaranteed by POBRA]; *Gonzalez v. City of Los Angeles* (2019) 42 Cal.App.5th 1034, 1043 [purpose of administrative appeal is to give officer an opportunity to establish

these issues must be resolved on remand, either by the agreement of the parties or by the trial court.

11.

a formal record of the circumstance surrounding his *termination*].)  Therefore, we conclude the termination of plaintiff's right to employment as a lieutenant entitled him to an administrative appeal pursuant to subdivision (b) of section 3304.

>      D.      Procedural Protections

The analysis of the parties' arguments is relatively straightforward because we have rejected the foundation for City's argument—namely, that plaintiff was an at-will employee for all purposes.  The employment agreement established plaintiff's right to employment as a lieutenant could be terminated only for "willful misconduct in office or conviction of a crime of moral turpitude."  Consequently, plaintiff's right to employment as a lieutenant is entitled to the procedural protections afforded other public safety officers whose employment can be terminated only for cause.  (See *Parker v. City of Fountain Valley* (1981) 127 Cal.App.3d 99, 106 [police sergeant's position described as permanent and tenured because he would be removed from his position only for cause].)

District's arguments, like the trial court's decision, relies heavily on *Holmes v. Hallinan* (1998) 68 Cal.App.4th 1523 (*Holmes*) and *Binkley* to define the extent of procedural protections necessary to satisfy POBRA.  We conclude those cases are distinguishable because they did not involve employment rights that could be terminated only for cause.  (See *Giuffre v. Sparks* (1999) 76 Cal.App.4th 1322, 1330 [only where peace officer is an at-will employee have courts found no absolute right to a full evidentiary hearing].)

In *Holmes*, *supra*, 68 Cal.App.4th 1523, the parties agreed the peace officer "was an at-will employee, terminable without cause."  (*Id*. at p. 1530.)  Similarly, in *Binkley*, *supra*, 16 Cal.App.4th 1795, the chief of police served at the pleasure of the city manager and, unlike plaintiff, did not retain a right to continued employment if removed as chief of police.  (*Id*. at p. 1807.)  Therefore, the lesser procedural protection approved in *Holmes* and *Binkley* do not satisfy the requirements of section 3304, subdivision (b) applicable to plaintiff's rights to employment as a lieutenant.

Many courts addressing the procedural requirements for an administrative appeal have stated that public safety officers are entitled to an evidentiary hearing before a neutral fact finder.  (*Gonzalez v. City of Los Angeles*, *supra*, 42 Cal.App.5th at p. 1043; *Conger v. County of Los Angeles* (2019) 36 Cal.App.5th 262, 269; *Morgado v. City and County of San Francisco* (2017) 13 Cal.App.5th 1, 7.)  The more extensive procedural protections applicable to public safety officers who may be terminated only for cause are addressed in *Caloca v. County of San Diego* (1999) 72 Cal.App.4th 1209 (*Caloca I*) and *Caloca v. County of San Diego* (2002) 102 Cal.App.4th 433 (*Caloca II*).  We conclude that those procedural protections are the minimum applicable to the administrative appeal in which plaintiff challenges the termination for willful misconduct of his rights to employment as a lieutenant.  Based on the freedom of contract applicable to California employment relationships, we conclude the parties' agreement that plaintiff was an at-will police chief means a lower level of procedural protections applies to his removal from that position.  (See *Holmes*, *supra*, 68 Cal.App.4th at p. 1530; *Binkley*, *supra*, 16 Cal.App.4th 1807.)

In *Caloca I*, four sheriff's deputies filed a petition for writ of mandate to compel the county and its civil service commission to conduct liberty interest hearings or, alternatively, an administrative appeal of a civilian law enforcement review board's findings of misconduct by the deputies.  (*Caloca I*, *supra,* 72 Cal.App.4th at p. 1212.)  The appellate court concluded the deputies were not entitled to a liberty interest hearing because there was no evidence that they suffered an actual loss of a government benefit as a result of the board's adverse findings.  (*Id.* at p. 1220.)  However, the court also concluded the deputies were entitled to an opportunity for an administrative appeal under section 3304, subdivision (b) because the board's findings constituted punitive action under POBRA and remanded for the issuance of a writ directing the civil service commission to conduct an administrative appeal.  (*Caloca I, supra,* at p. 1223.)  The court noted that the procedural details for implementing an administrative appeal are to

be formulated by the local agency and, therefore, did not impose specific procedural requirements. (*Ibid*.)

In *Caloca II*, three sheriff's deputies filed a petition for writ of mandate challenging the procedures applied to the administrative appeal of the board's findings of misconduct. (*Caloca II*, *supra*, 102 Cal.App.4th at p. 436.) The trial court granted the petition based on its conclusions "that the burden of proof could not be placed on a deputy and that without the consent of a deputy an administrative hearing could not be closed to the public." (*Ibid*.) The appellate court affirmed, stating:

> "At a minimum an administrative appeal requires independent fact finding in a de novo proceeding. In such a proceeding the proponent of any fact bears the burden of establishing it. Thus the commission could not place on officers the burden of refuting the civilian review board's misconduct findings. Moreover, the commission has not shown any substantial need to close its hearings over the objection of a deputy who is challenging an adverse finding." (*Caloca II*, *supra*, 102 Cal.App.4th at pp. 436–437.)

As in *Caloca I*, the Fourth District stated that the precise details of the procedures required by section 3304, subdivision (b) are left to local law enforcement agencies. (*Caloca II*, *supra*, 102 Cal.App.4th at p. 443.) Nonetheless, the court concluded the law clearly recognized some minimum procedural protections necessary to satisfy POBRA's requirement for an administrative appeal. A compliant administrative appeal required (1) an independent reexamination of the decision, (2) the reexamination be conducted by someone who was not involved in the initial determination, (3) the independent administrative decision maker to set forth findings to bridge the analytical gap between the raw evidence and the ultimate decision, (4) the hearing to "be treated as a de novo proceeding at which no facts are taken as established" and (5) the proponent of a particular fact to bear the burden of establishing it. (*Caloca II*, *supra*, 102 Cal.App.4th at pp. 443–444.) The court also concluded the hearing could not be closed over the officer's objection. (*Id*. at p. 446, fn. 3.)

14.

We conclude the foregoing minimum procedural protections must be provided to plaintiff in the administrative appeal provided to him in connection with the termination of his rights to employment as a lieutenant. The hearing offered by City did not satisfy these requirements and, therefore, did not comply with section 3304, subdivision (b). For example, the retention of final authority by the city manager did not provide plaintiff with a hearing by an independent decision maker as required by *Caloca II* and other case law because the city manager was involved in the initial decision to terminate plaintiff's employment. (See *Giuffre v. Sparks, supra,* 76 Cal.App.4th at p. 1330 [sheriff's deputy was entitled to a full evidentiary hearing before a neutral fact finder to satisfy due process and § 3304]; *Runyan v. Ellis* (1995) 40 Cal.App.4th 961, 967 [meeting between police officer and city manager was not sufficient to satisfy administrative appeal requirements of § 3304; officer was entitled to administrative appeal before civil service commission].) Also, City's proposed hearing did not provide plaintiff with a full evidentiary hearing where he had the right to cross-examine witnesses and the burden of proving a particular fact was placed on its proponent.

E.    Specific Procedural Details

Plaintiff's arguments about two procedural aspects of the administrative appeal raise issues that cannot be definitively resolved at this stage of the proceedings. All the circumstances relevant to determining the appropriate procedures for selecting a hearing officer and for selecting hearing dates are not contained in the appellate record and will not be known until other aspects of the administrative appeal are established.

1.    *Selection of a Hearing Officer*

Plaintiff contends that City cannot unilaterally select and pay for the hearing officer and cites *Haas v. County of San Bernadino* (2002) 27 Cal.4th 1017 (*Haas*) as support. In *Haas*, the Supreme Court considered "whether a temporary administrative hearing officer has a pecuniary interest requiring disqualification when the government unilaterally selects and pays the officer on an ad hoc basis and the officer's income from

15.

future adjudicative work depends entirely on the government's goodwill." (*Id*. at p. 1024.) The court concluded "the answer is yes." (*Ibid.*) This conclusion cannot be applied to the hearing officer who might preside over the administrative hearing on remand because it is unclear whether City will hire a hearing officer, who the compensated or uncompensated hearing officer might be, and the terms under which a compensated hearing officer might be paid.

For example, the administrative appeal might be heard by the city council with a member of the council acting as the hearing officer. In *Gray*, *supra*, 224 Cal.App.3d 621, the police chief alleged the city council was prejudiced against him and could not conduct the impartial hearing required by section 3304. (*Gray*, at p. 632.) This court concluded that the police chief "has thus far failed to establish good cause to recuse the city council." (*Ibid*.; see *Dole v. City of Chino* (1981) 117 Cal.App.3d 673, 682–684 [city council was appropriate body to hearing police chief's appeal].) Similarly, on the record presented in this appeal, we cannot conclude the city council is a biased decision maker unable to provide an impartial hearing of the administrative appeal. In addition, we cannot categorically declare that any hearing officer chosen and paid by City is biased because, under *Haas*, that determination depends on the terms of employment, the prospects for future employment, and other circumstances yet to be established in this case. Consequently, we will not direct the superior court to issue a writ of mandate prohibiting City from selecting and paying a hearing officer. In some circumstances such an arrangement might undermine the impartiality and independence of the hearing officer or final decision maker and in other circumstances it would not.

### 2. *Selection of Hearing Dates*

Plaintiff also contends City cannot unilaterally set dates for the administrative hearing. We cannot issue a blanket directive that the dates of the hearing must be the result of the parties' mutual agreement. Ultimately, City retains the authority to set the date of the hearing in the event the parties, acting reasonably and in good faith, are not

16.

able to agree on dates, and City's exercise of that authority is subject to the general restrictions inherent in the concept of a fair hearing. At this stage, we cannot predict that every instance in which City might set hearing dates without plaintiff's consent renders the hearing unfair. As a result, we will not direct the superior court to issue a writ of mandate prohibiting City from setting the hearing dates if the parties, acting reasonably and in good faith, cannot agree on dates.

### F.     Just Cause Standard

Plaintiff argues that subdivision (c) of section 3304 contains a just cause standard that applies to all chiefs of police. Plaintiff bases this argument on a description of the sponsor of the amendment set forth in an Assembly Public Safety Committee analysis that this court quoted in an earlier decision. (See *Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 368, 379–380 (*Robinson*); Assem. Com. on Public Safety, Analysis of Sen. Bill No. 2215 (1997-1998 Reg. Sess.) as amended May 19, 1998, p. 3 (Committee Analysis).) Plaintiff contends the Committee Analysis "makes it clear that the [L]egislature enacted this law to provide a Police Chief with the same 'just cause' standard governing permanent employee discipline appeals." Plaintiff also contends that if a police chief has no more rights in appealing a termination than a probationary employee, then subdivision (c) of section 3304 is wholly meaningless. We reject plaintiff's interpretation.

Nowhere does section 3304 state that just cause is required to discipline a chief of police. Instead, subdivision (c) of section 3304 plainly states that no chief of police may be removed without written notice that includes the reasons for removal and "an opportunity for administrative appeal." It also states the reasons for removal include "incompatibility of management styles or as a result of a change in administration." (§ 3304, subd. (c).)

Also, a Senate Floor analysis of Senate Bill No. 2215 (1997-1998 Reg. Sess.), which added subdivision (c) to section 3304, provides a description of the sponsor's

statement that are materially different from those in the Committee Analysis.  (See Sen. Rules Com., Off. of Sen. Floor Analysis, Unfinished Business Analysis of Sen. Bill No. 2215 (1997-1998 Reg. Sess.) as amended July 7, 1998, pp. 4–5 (Senate Floor Analysis).)  It set forth arguments in support of the amendments as follows:

> "The sponsors of the bill indicate, 'Senate Bill 2215 is a very simple bill.  It provides that a Chief of Police may [not] be disciplined without *written notice and the reasons therefor*.  Historically, California law enforcement has been the finest in the nation precisely because the Legislature has seen the wisdom of separating police organizations from the political process.  This is why peace officers, once they pass probationary status, are protected from termination except for just cause.

> " 'Ironically, a Chief of Police, who has reached the apex of his or her law enforcement career, reverts to the status of a mere probationary employee.  In other words, a Chief of Police may be dismissed for any reason.  Senate Bill 2215 does not guarantee that police chiefs cannot be fired.  If a chief fails to perform as expected, fails to follow the policy direction of the city[] council, or fails to properly lead the department, they can, and should be terminated or otherwise disciplined by the city council.  What Senate Bill 2215 does is try to protect chiefs *to some degree* from whimsical pressures that diminish the professionalism of the law enforcement mission.' "  (Senate Floor Analysis, *supra*, at pp. 4–5.)

The italicized text in this quote denotes language that is different from that included in the earlier Committee Analysis quoted in *Robinson*.  The Committee Analysis described the bill's sponsor as stating the bill "provides that the Chief of Police may not be disciplined without *just cause*" (Committee Analysis, *supra*, at p. 3, italics added), rather than stating "that a Chief of Police may [not] be disciplined without written notice and the reasons therefor."  (Senate Floor Analysis, *supra*, at p. 4.)  Also, the Committee Analysis did not include the phrase "to some degree."  We conclude the later issued Senate Floor Analysis more accurately describes the contents of subdivision (c) of section 3304 than the sponsor's statement included in the Committee Analysis.  Consequently, plaintiff's argument about a "just cause" standard does not accurately describe the version of section 3304, subdivision (c) actually enacted by the Legislature.

18.

## DISPOSITION

The order denying the petition for writ of mandate is reversed and the matter remanded for further proceedings. The superior court is directed to (1) vacate that order, (2) enter a new order granting the petition for writ of mandate, and (3) issue a writ of mandate directing City to (a) set aside its "Final Notice of Termination" dated November 15, 2018, and (b) provide plaintiff with an opportunity for an administrative appeal that, at a minimum, includes procedural protections that are consistent with this opinion.

On remand, if the parties are unable to agree on the specific procedures for the administrative appeal, the superior court has the authority to resolve that dispute upon application by one or both parties before the administrative hearing is held.

The superior court may, pursuant to the discretion granted by Code of Civil Procedure section 1108, require City to file a return describing the action taken to comply with section 3304 and satisfy the writ's requirements.

Plaintiff shall recover his costs on appeal.

FRANSON, ACTING P. J.

WE CONCUR:

PEÑA, J.

SMITH, J.

19.